# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:17-cv-00388-JHM**

**CHILDRESS CATTLE, LLC**                                             **PLAINTIFF**

**V.**

**CHRISTIE CAIN AND**                                         **DEFENDANTS**
**R & C CAIN FARMS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [DN 3], Plaintiff's Motion for Default Judgment [DN 7-1], Plaintiff's Motion for Leave to File Responsive Pleading [DN 8], Plaintiff's Motion to Strike [DN 12], and Defendants' Motion for Leave to File a Sur-Reply for Motion for Default Judgment [DN 13].  Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

Plaintiff Childress Cattle, LLC (hereinafter "Childress") operates as a cattle broker, selling cattle that it acquires from various stockyards to interested buyers.  (Compl. [DN 1-2] ¶ 5.)  Defendant R & C Cain Farms (hereinafter "Cain Farms") is in the business of buying cattle and was a customer of Childress' for several years prior to this action.  (Id. ¶ 6.)  Cain Farms was owned and operated by Roger Cain, now deceased.  (Id. ¶ 3.)  Plaintiff alleges that Roger Cain and his wife, Christie Cain, were partners in Cain Farms.  (Id.)  During these years, Cain Farms entered into several oral contracts with Childress in which Childress was to deliver cattle to Cain Farms and, in return, Cain Farms was to tender the agreed upon price.  (Id. ¶ 6.)  As of September 9, 2015, Cain Farms' account with Childress was paid in full.  (Id. ¶ 8.)  Between September 9, 2015 and December 22, 2015, Cain Farms ordered and received eight shipments of

cattle from Childress for a total of $675,239.63. (Id. ¶ 21.) As of December 22, 2015, Cain Farms' had remitted payments totaling $380,607.65. (Id.) Since then, Cain Farms has failed to tender further payment, leaving an outstanding balance of $294,631.98 as of April 28, 2017. (Id.) Due to this nonpayment, Childress contacted Christie Cain of Cain Farms many times requesting payment and informing Cain Farms of its intent to repossess the cattle; however, Cain Farms still failed to tender prompt payment. [Id.] Childress was unable to repossess the cattle, as it believes the cattle have all been sold. [Id.] As such, Childress filed suit on June 23, 2017 alleging breach of contract, breach of oral contract, conversion, and quantum meruit against Cain Farms and Christie Cain. (Id. ¶¶ 24–45.)

Before the Court now is Defendants' Motion to Dismiss premised upon a lack of personal jurisdiction, a lack of subject matter jurisdiction, improper service of process, and improper venue. In addition, various other motions are now before the Court as well. The Court will address each in turn.

## II. DISCUSSION

### A. Motion to Dismiss

Defendants' Motion to Dismiss sets forth several theories for relief, including: lack of personal of personal jurisdiction, a lack of subject matter jurisdiction, improper service of process, and improper venue.

### 1. Personal Jurisdiction

#### a. Standard of Review

The party asserting personal jurisdiction has the burden of showing that such jurisdiction exists. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Personal jurisdiction is "[a]n essential element of the jurisdiction of a district . . . court" and without personal

jurisdiction the court is "powerless to proceed to an adjudication." Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937); Schall v. Suzuki Motor of Am., Inc., No. 4:14-CV-00074-JHM, 2017 WL 2059662, at *1 (W.D. Ky. May 12, 2017). When a district court rules on a Rule 12(b)(2) motion to dismiss without an evidentiary hearing, the plaintiff need only make a "prima facie" case that the court has personal jurisdiction. See, e.g., Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012).

"In a diversity case, a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits." Third Nat. Bank in Nashville v. WEDGE Grp. Inc., 882 F.2d 1087, 1089 (6th Cir. 1989) (citing American Greetings Corp. v. Cohn, 839 F.2d 1164, 1167 (6th Cir.1988)); see also First Nat. Bank of Louisville v. J. W. Brewer Tire Co., 680 F.2d 1123, 1125 (6th Cir. 1982). Thus, the Court will apply Kentucky law. Kentucky's long-arm statute permits Kentucky courts to exercise personal jurisdiction over certain nonresident defendants. Churchill Downs, Inc. v. NLR Entm't, LLC, No. 3:14-CV-166-H, 2014 WL 2200674, at *5 (W.D. Ky. May 27, 2014) (citing KRS § 454.210). However, "the Kentucky Supreme Court [has] clarified that this statute is not co-extensive with federal due process." Id. (citing Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 56 (Ky. 2011)). A plaintiff's claims must instead "meet one of the nine explicit categories of the long-arm statute, even if federal due process would otherwise permit personal jurisdiction." Id. In order to assert personal jurisdiction over a defendant under the Kentucky long-arm statute, a plaintiff must show: "(1) [the defendant's] conduct falls under a statutory category identified in KRS § 454.210(2)(a), and (2) [the plaintiff's] claim 'arises from' that statutory provision." Id. (citing Caesars, 336 S.W.3d at 58). Under the second prong, "[a] claim 'arises from' certain conduct

when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." Id. (citing Caesars, 336 S.W.3d at 59).

Upon a finding that the above requirements are met, each defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Hinners v. Robey, 336 S.W.3d 891, 897 (Ky. 2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### b. Parties to the Action Generally

Both Defendants here, Cain Farms and Christie Cain, contend that Childress' Complaint should be dismissed for lack of personal jurisdiction. Specifically, Cain Farms, as an Indiana entity, and Christie Cain, as an Indiana resident, argue that they are not subject to personal jurisdiction under the Kentucky long-arm statute or the Due Process Clause due to their lack of contacts with the Commonwealth of Kentucky.

In its Complaint, Childress alleges that Cain Farms is a partnership and that Roger and Christie Cain were both general partners. Defendants argue that Cain Farms was in fact a sole proprietorship and that Christie Cain was neither a partner nor an agent of the sole proprietorship, rather, she was simply Roger Cain's wife. Though these matters may be dispositive as to the claims against the Defendants individually, here, the Court will take all allegations in the well-pleaded complaint as true and save all questions of material fact for later proceedings. Johnson v. Kentucky Youth Research Ctr., Inc., 682 S.W.2d 799, 800 (Ky. Ct. App. 1985) (assuming the allegations in the complaint as true, that defendant was a sole proprietorship, and saving the question of whether the entity was a sole proprietorship or a partnership for summary judgment).

Plaintiff has plausibly shown that Cain Farms was a partnership and Christie Cain was a partner because the name of the entity—R & C Cain Farms—reflects Roger and Christie Cain's initials, Christie signed checks on behalf of R & C Cain Farms to pay for the cattle at issue, the checks Christie signed were issued from R & C Cain Farms' checking account rather than a personal account, Christie fielded phone calls from Bonnie Childress regarding payment for the cattle, and Christie corresponded with Childress regarding payment and cattle after Roger's death. These facts give rise to the reasonable inference that a general partnership was formed. Therefore, for the purposes of this Opinion, Cain Farms will be treated as a partnership and Christie Cain as a partner. Accordingly, the Court must determine that each Defendant is subject to jurisdiction in the Commonwealth sufficient to satisfy the long-arm statute and that each Defendant had minimum contacts with the Commonwealth of Kentucky in order to properly assert personal jurisdiction.

### c. Cain Farms

As to Cain Farms, "a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts." Guy v. Layman, 932 F. Supp. 180, 182 (E.D. Ky. 1996) (quoting Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990)); see also Stirling v. Hunt, No. 12-2737, 2013 WL 3328674, at *9 (W.D. Tenn. July 1, 2013) (adopting the reasoning in Guy, 932 F. Supp. at 182). Thus, Roger and Christie Cain's contacts with Kentucky will be examined in order to determine if this Court has sufficient personal jurisdiction over Cain Farms.[1]

---

[1] Even if Cain Farms is determined to be a sole proprietorship, Roger Cain's contacts with the Commonwealth of Kentucky can give rise to personal jurisdiction over Cain Farms. At issue here are contracts made by Roger Cain with Childress in Kentucky. "The business contracts —those made personally or by agents within their actual or apparent authority or, when made beyond the agency power, ratified—are the proprietor's contracts." Sparkman v. Consol Energy, Inc., 470 S.W.3d 321, 328 (Ky. 2015), as corrected (Sept. 24, 2015). Therefore, the acts of the sole proprietor are the acts of the sole proprietorship, and the minimum contacts analysis will be the same as for a partnership where the partner's contacts are imputed to the partnership.

### i. Long-Arm Statute

Childress argues that this court has personal jurisdiction over Cain Farms pursuant to Kentucky's long-arm statute, KRS § 454.210, as Cain Farms is a nonresident of Kentucky. This requires two separate showings by Childress, as the Court must both determine "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006).

As to the first requirement, the Kentucky Supreme Court has found that the statute requires a two-prong showing before a court can exercise personal jurisdiction over a nonresident. Ceasar's, 336 S.W.3d at 57. First, the Court must find that a nonresident's conduct or activities fall within one of nine enumerated subsections in KRS § 454.210. Id. at 58. Second, the Court must determine if the plaintiff's claims arise from the defendant's actions. Id. This requires a showing of "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" Id. at 59.

The Court finds that Cain Farms' activities in the state constitute "transacting any business in this Commonwealth," the first of the nine possibilities for jurisdiction under KRS § 454.210. "Courts construing the definition of "transacting business" have defined the terms using their plain meaning. Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct (negotiations, business, etc.) to a conclusion.'" Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017) (citing Bayou City Expl., Inc. v. Consumer Advocate Servs. Enters., LLC, No. 1:14-CV-99-DJH, 2015 WL 4094259, at *3 (W.D. Ky. July 7, 2015)). "[T]he key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." Philmo, Inc. v. Checker Food

Holding Co., No. 1:15-CV-00098-JHM, 2016 WL 1092862, at *3 (W.D. Ky. Mar. 21, 2016)

(quoting Spectrum Scan, LLC v. AGM CA, No. 3:07 CV 72 H, 2007 WL 2258860, at *3 (W.D.

Ky. Aug. 2, 2007)).  The Court must consider that, "a contract with a Kentucky company [does]

not alone support the exercise of jurisdiction over a nonresident [d]efendant under KRS

454.210(2)(a)(1)."  Churchill Downs, 2014 WL 2200674, at *6 (citing Spectrum Scan, 2007 WL

2258860, at *2–3); see also Calphalon Corp. v. Rowlette, 228 F. 3d 718, 722 (6th Cir. 2000)

("[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction over [a

non-resident defendant]").  Instead, "Kentucky courts have required a course of direct,

affirmative actions within a forum that result in or solicit a business transaction."  Gentry v.

Mead, No. CV 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (quoting

Modern Holdings, LLC v. Corning, Inc., No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky.

Mar. 31, 2015)).

Here, Cain Farms' conduct amounted to that necessary to confer jurisdiction under the

Kentucky long-arm statute.  Cain Farms entered into several contracts within the state between

2011 and 2016, performed and paid-in full on those contracts, entered into eight oral contracts

between September 9, 2015 and November 9, 2015 alone, partially paid on those 2015 contracts,

contacted Childress and was contacted by Childress numerous times regarding these and all

contracts between 2011 and 2015, and maintained an ongoing business relationship with

Childress Cattle in the state for a number of years.  Further it is clear that the contracts created

between Cain Farms and Childress have given rise to the instant action, meaning there is a

"reasonable and direct nexus between the conduct causing injury and the defendant's activities in

the state," Caesars, 336 S.W.3d at 59, as the nonpayment on these contracts provide the basis for

the instant suit.  Based on these facts, and because the parties do not dispute the fact that Cain

Farms transacted business in Kentucky under the long-arm statute, Cain Farms' conduct sufficiently falls within the provision of the long-arm statute permitting personal jurisdiction over any nonresident defendant "transacting any business in this [C]ommonwealth." KRS § 454.210(2)(a)(1); see Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp., No. 3:16-CV-00024-JHM, 2017 WL 157834, at *3 (W.D. Ky. Jan. 13, 2017); Philmo, No. 1:15-CV-00098-JHM, 2016 WL 1092862, at *3 (collecting cases).

### ii. Due Process Requirements

After finding that Kentucky authorizes jurisdiction, the Court must determine whether the exercise of personal jurisdiction conforms with due process. "The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen, 935 F.2d at 1459 (citations omitted). The Sixth Circuit has identified three criteria for determining whether specific personal jurisdiction may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

The Sixth Circuit considers purposeful availment, the first prong under this test, "essential" to a finding of personal jurisdiction. Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (quoting Calphalon Corp., 228 F.3d at 722). This requirement "serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." Id. (quoting Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001)).

Additionally, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [the agent] purposely availed [himself] of the forum and the reasonably foreseeable consequences of that availment." Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 698 (6th Cir. 2000). "Physical presence of an agent is not necessary, however, for the transaction of business in a state." S. Mach. Co., 401 F.2d at 382.

Cain Farms principally argues that it did purposefully avail itself of the privilege of acting in or causing a consequence in the Commonwealth of Kentucky as a nonresident buyer of goods. It relies heavily on Tube Turns Div. of Chemetron Corp. v. Patterson Co., 562 S.W.2d 99, 100 (Ky. Ct. App. 1978), which states that courts generally distinguish nonresident buyers and sellers because "[u]nlike the nonresident seller who seeks to distribute its products within the forum state, the nonresident buyer enjoys no particular privilege or protection in purchasing products from a resident seller." However, Tube Turns is not wholly dispositive. The Tube Turns court noted that the order at issue was not a single order, a part of a series of transactions, or a particularly large order. Id. The court in Tube Turns concluded that "[t]he presence of one or more of such factors can justify exercising jurisdiction over a nonresident buyer." Id. at 101.

Cain Farms argues that it did not solicit business in or perform work in Kentucky, sign contracts in Kentucky, provide goods or services in Kentucky, and never maintained an office, post office box, or phone listing in Kentucky. Cain Farms contends that the extent of its interaction with Kentucky included the phone calls made by Roger Cain, who never visited Kentucky. Though Cain Farms alleges that Roger Cain never visited Kentucky, physical presence is not a requirement for purposeful availment. See S. Mach. Co., 401 F.2d at 382.

While the factors listed by Cain Farms certainly weigh against purposeful availment, the contacts with Kentucky were not quite as limited as Cain Farms suggests. Roger Cain, on behalf of Cain Farms, placed numerous orders with Childress over the course of the five years prior to his death—between 2011 and 2016. (Aff. James Childress [DN 7-1] at 1.) In fact, Cain Farms had been a "regular customer" during this time period. (Id.) Between September and November of 2015 alone, Cain Farms placed eight large orders—sometimes totaling over one hundred thousand dollars at a time—with Childress. (Id. at 1–3.) Cain Farms paid in part on several of these orders, sending large payments in the form of checks to Childress in Kentucky. (Id.) Over the years, the transactions combined amounted to over one million dollars.

Weighing these factors, the Court finds that Cain Farms has purposefully availed itself to the protections of the state of Kentucky so as to establish personal jurisdiction. These contacts are hardly "random," "fortuitous," or "attenuated." Neal, 270 F.3d at 331. Instead, the contacts were continuous, so much so that they caused Childress and Cain Farms to develop an ongoing business relationship of trust. James Childress stated that he had "a very good business relationship with Roger Cain and R & C Cain Farms," noting that "[i]nvoices were often paid late, but were always eventually paid." (Aff. James Childress [DN 7-1] at 1.) Cain Farms consistently solicited business with Childress within Kentucky. (Id. at 1–3.) Roger Cain, on behalf of Cain Farms, placed the eight orders at issue with Childress. (Id.) Roger Cain also actively communicated with Childress by placing "countless phone calls" to Childress throughout the course of their relationship. (Pl.'s Resp. [DN 11] at 6.)

Ultimately, "where a defendant 'has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there.'" Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir.

2007) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985)). "Although entering into a contract with an out-of-state party alone does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment." <u>Id.</u> Factors to consider are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." <u>Burger King</u>, 471 U.S. at 479. Here, the parties did not engage in a one-time transaction—they engaged in a continuing business relationship that lasted a period of many years. Cain Farms reached out beyond Indiana's borders to conduct business with a company whose principal place of business it knew to be in Kentucky. Such contacts are not "random," "fortuitous," or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment. <u>Air Prod. & Controls</u>, 503 F.3d at 551; <u>see</u> <u>Aug. v. Manley Toys, Ltd.</u>, 68 F. Supp. 3d 722, 730 (E.D. Mich. 2014) (finding sufficient purposeful availment where nonresident defendant contracted with a resident of Michigan, never visited Michigan, contacted the resident through email and telephone only, and deposited funds into resident's Michigan bank account).

Further, the remaining due process requirements have been met as well. The Kentucky long-arm statute already requires a finding that the claims arise from the defendant's contacts with the state, just as the Due Process Clause does, and the Court has already established that Childress' claims arise from the business Cain Farms transacted while in Kentucky. Finally, "where, as here, the first two criteri[a] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteri[on].'" <u>Air Prod. & Controls</u>, 503 F.3d at 554 (quoting <u>Theunissen</u>, 935 F.2d at 1461). Under the third prong, courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's

interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution." Id. at 554–55 (citation omitted).

Here, while Cain Farms is a resident of Indiana, the burden to defend itself is not so great so as to be unreasonable, as the evidence indicates that Cain Farms is located in Rush County, Indiana, approximately 120 miles from this Court. The Commonwealth of Kentucky has an interest in providing a forum for its residents to obtain relief from parties, even nonresident parties, that breach contracts with Kentucky citizens, particularly contracts dealing with large sums, as is the case here. Childress has an interest in obtaining such relief, as is it owed over $290,000 due to Cain Farms' alleged breaches. And, finally, while some of the actions at issue in this case took place in Indiana, any Indiana forum would be unable to provide more effective or efficient relief because the evidence and witnesses in this matter seem evenly split between the parties in Kentucky and Indiana. Further, Indiana has less of an interest because Indiana forum would only allow an Indiana resident, Cain Farms, to defend an action, whereas this Court gives a Kentucky resident, Childress, an opportunity to enforce its rights under contracts made in Kentucky. All factors considered, the Court has personal jurisdiction over Cain Farms.

### d. Christie Cain

As to Christie Cain individually, the Court must find that she transacted business in and had sufficient minimum contacts with the Commonwealth of Kentucky in order for personal jurisdiction to be proper. See Guy, 932 F. Supp. at 183 (finding that for partners, liability and jurisdiction are separate, each partner must individually have sufficient contacts with the forum, and the partnership's contacts or other partners' contacts do not impute jurisdiction onto individual partners).

### i. Long-Arm Statute

Echoing the above analysis, the Court must first establish that Christie Cain's conduct or activities fall within one of nine enumerated subsections in KRS § 454.210 and that the plaintiff's claims arise from Christie Cain's actions, which requires "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" Ceasar's, 336 S.W.3d at 58–59.

The Court finds that Christie Cain's activities in the state constitute "transacting any business in this Commonwealth," the first of the nine possibilities for jurisdiction under KRS § 454.210. Though a contract alone does not support the exercise of jurisdiction, Churchill Downs, 2014 WL 2200674, at *6, a course of direct, affirmative actions within a forum that result in or solicit a business transaction can sufficiently support a finding of personal jurisdiction, Gentry, 2016 WL 6871252, at *3. Here, Christie Cain did not enter into the contracts with Childress, but she did ultimately tender performance on those contracts by signing and sending the checks on behalf of Cain Farms to Childress. She sent checks made from the Cain Farms account to Childress Cattle in Kentucky and she directed Cain Farms' financing company to pay invoices. (Pl.'s Reply [DN 12] at 8.) Additionally, Childress asserts that she fielded phone calls regarding the payment on the invoices prior to Roger Cain's death. (Id. at 8.) It is undisputed that on behalf of Cain Farms, Christie communicated with Bonnie Childress, wife of James Childress, owner Childress Cattle, regarding payment after Roger Cain's death. Childress' allegations and the undisputed facts illustrate that Christie Cain was involved in the ongoing relationship between Cain Farms prior to and after Roger Cain's death. Because this relationship was a lengthy, continuous, and consistent business relationship, the Court finds Christie Cain transacted business within the Commonwealth. Additionally, her actions are

directly related to Childress' injury. This is particularly true because Childress complains of nonpayment on contractual obligations, and the evidence illustrates that Christie (perhaps exclusively) was responsible for paying on the contracts at issue. Therefore, her failure to perform and pay for the delivered cattle directly gives rise to Childress' claims and the nexus requirement is satisfied.

### ii. Due Process Requirements

The Court must next determine that sufficient minimum contacts exist between the nonresident and the forum under the Due Process Clause. The first step in this inquiry is the defendant's purposeful availment to the forum. S. Mach. Co., 401 F.2d at 381. As stated above, Christie Cain's contacts cannot have been "random," "fortuitous," or "attenuated." Neal, 270 F.3d at 331. Though Christie Cain's contacts were inarguably fewer and less frequent than Roger Cain's (and thereby Cain Farms'), she still had sufficient contact with the forum state to reasonably expect to be haled into court here in Kentucky. As discussed above, Christie Cain played a large part in performing on the contracts that Cain Farms created with Childress. Roger Cain may have facilitated the contracts themselves by placing phone calls and contracting orally, but Christie Cain was responsible for the payment due to Childress. Indeed it appears that Christie, rather than Roger, ultimately rendered performance as she signed and sent checks to Childress and she directed the finance company to pay on Childress' invoices. (Def.'s Reply [DN 12] at 8.) Additionally, she handled phone calls regarding payment placed by Childress because, it appears, she was mostly or solely responsible for the payment. (Id.) Further, she effectively took over Cain Farms after Roger Cain's passing and transacted business on behalf of Cain Farms. (Id.) Ultimately, "where a defendant 'has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of

conducting business there.'" Air Prod. & Controls, 503 F.3d at 551 (quoting Burger King, 471 U.S. at 476). Christie Cain created the continuing obligations contemplated by the requirements of purposeful availment by paying on several of the contracts with Childress, who relied on payment and expected to be paid due to the nature of the extensive and steady business relationship involved.

Though a close question, the Court finds that Christie's involvement does not offend the notions of fair play and substantial justice. It is fair to say that when one is responsible for and actually does perform and tender payment on several contracts with a supplier and unseasonably halts payments without proffering an explanation, one would reasonably expect to be haled into court in the forum where payment was due. This general notion describes the situation herein. Christie Cain was responsible for the payment on the contracts and ceased payment without notice or expressed reasoning to Childress. At that time, Christie Cain should have reasonably expected to be haled into court in Kentucky to pay on those contracts to a Kentucky supplier.

The second and third due process requirements are additionally met. Here, the cause of action arises from specifically Christie Cain's activities (or lack thereof) in Kentucky. Because Christie Cain was responsible for the payment on the contracts at issue, and payment ultimately was not tendered, Christie Cain's failure to pay directly gave rise to Childress' claims. Additionally, as discussed in the analysis as to Cain Farms, there is no undue or unreasonable burden on Christie Cain to defend in Kentucky; Kentucky has a strong interest in protecting the rights of its citizens; Childress has a large pecuniary interest in obtaining relief, as the cattle were not repossessed; and Indiana has no more compelling interest or ability to better resolve this matter. Accordingly, the Court has personal jurisdiction over Christie Cain as well.

## 2. Subject Matter Jurisdiction

Alternatively, Defendants argue that the doctrine of claim preclusion or res judicata warrants dismissing Childress' complaint for lack of subject matter jurisdiction.[2] "State-court judgments are given the same preclusive effect under the doctrines of res judicata and collateral estoppel as they would receive in courts of the rendering state." Anderson v. City of Blue Ash, 798 F.3d 338, 350 (6th Cir. 2015) (quoting Ohio ex rel. Boggs v. City of Cleveland, 655 F.3d 516, 519 (6th Cir. 2011)). In this diversity case, the Court will look to Indiana law to determine the preclusive effect that attaches to an Indiana state court judgment. See Anderson, 798 F.3d at 350; Young v. Twp. of Green Oak, 471 F.3d 674, 680 (6th Cir. 2006); N. Indiana Commuter Transp. Dist. v. Chicago SouthShore & S. Bend R.R., 685 N.E.2d 680, 684 (Ind. 1997).

In Indiana, the following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: "1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, *or could have been*, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit *or their privies*." Hermitage Ins. Co. v. Salts, 698 N.E.2d 856, 859 (Ind. Ct. App. 1998); see Indianapolis Downs, LLC v. Herr, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005); see also Valbruna Slater Steel Corp. v. Joslyn Mfg. Co., 804 F. Supp. 2d 877, 881 (N.D. Ind. 2011), modified, No. 1:10-CV-044 JD, 2011 WL 8320458 (N.D. Ind. Nov. 17, 2011).

In order for a judgment to have preclusive effect under the principles of claim preclusion, the claim must "have been fully and fairly litigated and finally decided in the court

---

[2] "Some courts have considered a Rule 12(b)(1) motion . . . proper for dismissing a case under the doctrines of res judicata or collateral estoppel"; however, other courts consider a motion based on res judicata principles proper when filed under Rule 12(b)(6). 5B Charles Alan Wright et al., Federal Practice and Procedure § 1350 n.8.60 (3d ed.), Westlaw (database updated April 2017). Because the Court will undertake a similar analysis under either section of Rule 12 and because the parties have fully briefed the matter, the Court will address this argument herein.

which rendered the original judgment." Pringle v. Standard Life & Acc. Ins. Co., 391 N.E.2d 677, 683 (Ind. App. 1979) (quoting Durfee v. Duke, 375 U.S. 106, 111 (1963)); Sec. State Bank v. Washburn, 650 N.E.2d 74, 76 (Ind. Ct. App. 1995); see Butler v. Stover Bros. Trucking Co., 546 F.2d 544, 551 (7th Cir. 1977) (finding that preclusion will not be applied unless the party it is asserted against "had a full and fair opportunity to litigate the issue in the prior proceeding and that application of the doctrine will not result in an injustice under the particular circumstances of the case").

The issue here is whether the party against whom preclusion is sought, Childress, had a full and fair opportunity to litigate in the Rush County probate proceedings so as to give rise to preclusive effect herein. Under Indiana law, any person bringing a claim adverse to the estate of a decedent is deemed incompetent to testify as a witness as to matters against the estate. Ind. Code Ann. § 34-45-2-4. This is aptly named the "dead man's statute," as its purpose is to is to protect a decedent's estate from spurious claims. [3] Fletcher v. Hoeppner Wagner & Evans, LLP, No. 2:14-CV-231, 2015 WL 4599439, at *3 (N.D. Ind. July 29, 2015) (citing Gabriel v. Gabriel, 947 N.E.2d 1001, 1009 (Ind. Ct. App. 2011)). In deciding the preclusive effect of the statute, the Court must look to Indiana law and predict what effect the Indiana courts would give to prior litigation subject to this statute. Anderson, 798 F.3d at 350. Courts within the Seventh Circuit have summarily denied giving preclusive effect to original judgments that limited the testimony and evidence put on by the parties due to dead man acts. Fred Olson Motor Serv. v. Container Corp. of Am., 401 N.E.2d 1098, 1102 (Ill. App. 1980) (seminal case denying preclusive effect of an original judgment where a party was unable to fully present evidence in the first action, finding that the use of the dead man's act created a fundamental unfairness in the subsequent

---

[3] As a general note, Kentucky's dead man's statute, KRS § 421.210, was repealed in 1992, upon enactment of the Kentucky Rules of Evidence. The previous testimonial prohibitions against such testimony do not now apply, although certain testimonial privileges may survive a declarant's death. Ky. R. Evid. 503(c), 506(c).

case as to not allow the application of res judicata); see Butler v, 546 F.2d at 551 (finding that it would be unfair to allow a plaintiff to invoke preclusion and benefit from the operation of the dead man act); Kemling v. Country Mut. Ins. Co., 437 N.E.2d 1253, 1257–58 (Ill. App. 1982) (finding that where the dead man's act prevented a party from presenting evidence in a prior proceeding, that party did not have a full opportunity to litigate, and preclusion will not prevent relitigation in the subsequent suit); see also Snider v. Consolidation Coal Co., 973 F.2d 555, 559 (7th Cir. 1992) ("A party has not had the requisite full and fair opportunity if he or she was unable to present critical evidence in the initial proceeding."); Kendall v. C.F. Indus., Inc., 624 F. Supp. 1102, 1107 (N.D. Ill. 1986) ("[W]here the second action uses procedures or evidence not available in the first . . . preclusion should not apply.").

Following suit, the Court will not give preclusive effect to the Indiana probate proceeding. The Rush County Superior Court denied Childress' claims against the estate of Roger Cain. (Order [DN 3-4] at 1.) In so doing, the court determined that because Childress' claims were adverse to the estate, James and Bonnie Childress were found to be incompetent witnesses under Indiana's dead man's statute, Ind. Code Ann. § 34-45-2-4. Pursuant to this statute, the court precluded James and Bonnie Childress from testifying at all in the proceeding and from offering evidence as to their claims against the estate. (Order [DN 3-4] at 2–3.) Specifically, the court refused the Childresses to admit invoices as to the cattle delivered to Cain Farms because the testimony of the Childresses would be required to establish a foundation for that evidence. (Id. at 3.) Ultimately, the court found that the Childresses had proved, by a preponderance of the evidence, "that they shipped and delivered cattle on numerous occasions" and "that they have received payment from the decedent for cattle"; however, they "failed to

prove that they were not paid in full." (Id. at 2.) Therefore, the court denied Childess' claim against the estate. (Id. at 3.)

It is clear that Childress has not had its claims litigated at all, much less fairly or fully. James and Bonnie Childress, of Childress Cattle, were entirely unable to put on evidence of their claims against the estate or to defend their claims through testimony. Even their invoices were denied admission by the court. As seen, courts in the Seventh Circuit have squarely addressed this issue and determined that giving preclusive effect to a judgment such as this one, rendered without all parties being able to fully and fairly litigate, would result in manifest injustice and unfairness in any later proceeding. Though the Indiana Supreme Court has not ruled on the preclusive nature of first judgments invoking the dead man's act, this Court finds the reasoning used by other courts in the Seventh Circuit[4] persuasive and predicts that the Indiana Supreme Court would likely adopt this reasoning as well. As such, this Court will not give preclusive effect to the Rush County Superior Court judgment, as the Childresses were denied the opportunity to fully and fairly litigate their claim.[5] To reach any other conclusion would likely be an unconstitutional denial of due process of law.

---

[4] These cases focus on Illinois law, which has a similar dead man's act: "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability . . . ." 735 Ill. Comp. Stat. Ann. 5/8-201.

[5] Even if the Indiana Supreme Court would reach a different decision, the Court has grave doubts as to whether there is mutuality of the parties here. Defendants contend that prior probate proceeding involved the same parties in this suit, whereas Childress contends that the parties are now different. In the probate proceeding, the parties included Childress Cattle and Roger Cain's estate. Here, the parties include Childress Cattle, R & C Cain Farms, and Christie Cain. For the purposes of this Opinion, the Court has assumed Plaintiff's allegations in its well-pleaded Complaint to be true and has treated Cain Farms as a partnership and Christie Cain as a partner. As such, the parties here do not appear to be the same as in the original probate action. Therefore, the doctrine of claim preclusion alternatively fails for a lack of mutuality.

### 3.  Improper Service of Process

Defendants contend that service upon Christie Cain was improper because Cain Farms was a sole proprietorship and Christie Cain could not have been served because she was not a managing agent of the proprietorship and service was improper as to both Defendants because they are both not subject to Kentucky's long-arm statute, KRS § 454.210.  As discussed above, for the purposes of this Opinion, the Court will consider the facts Childress alleged in its well-pleaded complaint as true and will assume that Cain Farms was a partnership and that Christie Cain was a partner.  The service of process was effectuated on Christie Cain as to her individually and her as "d/b/a [doing business as] R & C Cain Farms."  (Sec. State Return Service [DN 12-1] at 1.)  As such, service was proper because Cain Farms, as a partnership, was properly served by service on a partner, Christie Cain, and Christie Cain, as a partner, was properly served as well.  Ky. R. Civ. P. 4.04(4) ("Service shall be made upon a partnership or unincorporated association subject to suit under a common name by serving a partner or managing agent of the partnership or an officer or managing agent of the association . . . .").  Additionally, as determined in Par A.1. *supra*, both defendants are subject to personal jurisdiction in Kentucky under Kentucky's long-arm statute.  Accordingly, the Court will not dismiss Childress' Complaint for improper service of process.

### 4.  Improper Venue

Defendants alternatively argue that venue is improper and that the Court should dismiss the case under the doctrine of forum non conveniens.  (Mot. Dismiss [DN 3-1] at 11.) Defendants assert that "a court, even when properly vested with jurisdiction and venue, may dismiss an action upon the determination [that a forum] more convenient for the parties and

witnesses [exists].” (Id. (citing Roos v. Kentucky Ed. Ass’n, 580 S.W.2d 508, 508 (Ky. Ct. App. 1979)).

In this Circuit, “[a] dismissal upon the grounds of forum non conveniens is justified when a defendant establishes that an adequate alternative forum is available and that the public and private factors enumerated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947) demonstrate that the chosen forum is unnecessarily burdensome to a defendant or a district court.” Zions First Nat. Bank v. Moto Diesel Mexicana, S.A. de C.V., 629 F.3d 520, 523 (6th Cir. 2010). In a forum non conveniens challenge, the relevant public and private factors, as set forth in Gulf Oil, “include access to witnesses and evidence, availability of compulsory process, cost of obtaining witnesses, administration difficulties for the trial court, local interest in the litigation, and the law applicable to the controversy.” Id. (citing Gulf Oil, 330 U.S. at 508–09). Typically, “a district court may decline to exercise jurisdiction over a case when a foreign tribunal can more appropriately conduct the litigation,” Ajuba Int’l, L.L.C. v. Saharia, 871 F. Supp. 2d 671, 680 (E.D. Mich. 2012), “as the doctrine of forum non conveniens applies only in cases in which the alternative forum is in another country; if another federal district is an alternative forum, dismissal on grounds of forum non conveniens is inapplicable and statutory provision related to change of venue applies.” Zions, 629 F.3d at 520 hn.4.

Here, Defendants are citizens of Indiana and Childress is a citizen of Kentucky; meaning, Defendants are not seeking dismissal under forum non conveniens because a more appropriate venue lies outside of the United States. Instead, they allege that the proper venue lies in Indiana. Because another federal district court would be a proper venue, to dismiss this action under forum non convenience would be an inappropriate application of the doctrine.

Additionally, "[i]n determining whether a case should be dismissed on the grounds of forum non conveniens, a district court must apply a strong presumption in favor of a plaintiff's selected forum, particularly if the forum is the home of the plaintiff, because "it is reasonable to assume that this choice is convenient." Id. at 523–24. Defendants have neither argued nor established that the "oppressiveness and vexation" Defendants face is totally out of all proportion to Childress' convenience or that this venue is "unnecessarily burdensome." Id. For these reasons, the Court will not dismiss Childress' complaint for improper venue under forum non conveniens.

Overall, Defendants' Motion to Dismiss fails on all accounts. Several factual issues have arisen, and they have not been ignored by the Court. At this stage, these issues cannot be resolved due to the incompleteness of the record; therefore, they will be properly decided upon motions for summary judgment or reserved for a jury trial.

## B. Motion for Default Judgment

Childress filed a Motion for Default Judgment in the LaRue Circuit County Court on June 23, 2017 arguing that service was proper as of June 1, 2017, and, because Defendants failed to respond within 20 days, default was proper. (Mot. Default J. [DN 7-1] at 1.) This Motion is now before the court because a "federal court takes the case on removal exactly as the case stood in state court and treats all pending motions as if filed in federal court." Williamson Cty. Bd. of Educ. v. C.K., No. 3:07-0826, 2007 WL 3023616, at *4 (M.D. Tenn. Oct. 11, 2007).

Defendants argue that they were served and answered within the 20 day time period required in Kentucky state court. They first argue that the service rendered on June 1, 2017 was actually valid effective June 9, 2017. This first attempt at service was made by the Kentucky Secretary of State, which sent a summons and complaint to Defendants via certified mail on two

occasions on May 15, 2017. (Mot. Default J. [DN 7-1] at 1.) The Secretary of State made its return to the LaRue County Circuit Court on June 1, 2017, and this return was filed on June 9, 2017. It is well-established that "[w]hen the Secretary of State [makes] its statutorily required return to the circuit court, the time for answering the complaint by [the defendant begins] to run." Deskins v. Estep, 314 S.W.3d 300, 303 (Ky. Ct. App. 2010). Defendants argue that the date that the return was filed with the court, June 9, 2017, not the date that the return was actually made, June 1, 2017, triggered the 20 day time period for answering the Complaint. However, the Kentucky Court of Appeals has determined that the summons and complaint are deemed noticed as of the date of the return, not as of the date the return is filed with the circuit court. Spragens v. Eads, No. 2011-CA-001182-ME, 2012 WL 2052103, at *3 (Ky. Ct. App. June 8, 2012). Therefore, the service was effective on June 1, 2017. The second attempt at service was made by the Rush County Sheriff's Office and made on June 7, 2017. This service was undisputedly effective. Regardless of the second service, Defendants were served as of the date of the return by the Secretary of State on June 1, 2017.

When using June 1, 2017 as the date of service, it is clear that Defendants did not respond within the prescribed 20 day period under state law. However, Defendants did properly and timely remove this action pursuant to the 30 day time period afforded by 28 U.S.C. § 1446(b). Defendants must be afforded the right of removal under the federal removal statute, 28 U.S.C. § 1446 and must be given the statutorily prescribed 30 day time limit—any other result would vitiate the very foundation of the rule.

Even more, the law disfavors default judgments, particularly in removal actions. See Newsome v. Alexander, No. 79-70192, 1979 WL 15498, at *4 (E.D. Mich. June 8, 1979) (citation omitted). This is because "the central purpose of the removal statutes would be

abrogated and form would be elevated over substance if the defaults were upheld" merely because they were entered prior to the running of the removal time. Id. Meaning, "to avoid the entry of a default, [defendants] would [be] forced to answer the complaint in state court within [the prescribed 20] days, or complete the process of removal within that time. Yet Congress has seen fit to grant 30 days for removal." Id. (citing Berberian v. Gibney, 514 F.2d 790, 792 (1st Cir. 1975)). In short, the interests of justice do not allow this Court to give effect to the Motion for Default Judgment filed in the LaRue County Circuit Court when the instant Notice of Removal was proper. Accordingly, the Court will not grant Childress' Motion for Default Judgment.

**C. Motion for Leave to File Responsive Pleading**

Alternatively, Defendants have requested the Court grant them leave to file a responsive pleading to Childress' Complaint in the event that the Court finds that they did not properly respond in time. Because the Court denied the Motion for Default as seen above, no additional time is necessary to file a responsive pleading. Therefore, the Motion for Leave is moot.

**D. Motion to Strike**

The Court will now address Childress' Motion to Strike Christie Cain's affidavit. In the Motion to Strike, Childress summarily argues that the Affidavit of Christie Cain [DN 8-3] should be stricken from the record because it "is self-serving, unsupported by actual facts, contains hearsay, and includes information irrelevant to the issues in this cause of action and in these pleadings." (Mot. Strike [DN 12] at 9.) Childress principally relies on Pixler for the proposition that, in reviewing motions to dismiss, the Court should use the same standard as it would for motions for summary judgment; meaning, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Pixler v. Huff, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *4 (W.D. Ky. Nov. 17, 2011) (quoting Fed. R. Civ. P. 56(c)).

Childress' argument in the instant context is inapposite. Though Childress points to neither the correct federal rules nor relevant precedent, Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike. Under Federal Rule of Civil Procedure 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to avoid the expense of 'litigating spurious issues' by dispensing with them before trial." CWI, Inc. v. Smartdog Servs., LLC, No. 1:15-CV-00139-GNS, 2016 WL 2654085, at *3 (W.D. Ky. May 9, 2016) (quoting Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)); Pixler, 2011 WL 5597327, at *16. "When ruling on a motion to strike, the court must view the pleading in question in the light most favorable to the non-moving party." Boultinghouse v. Herrington, No. 4:14-CV-00100-JHM, 2016 WL 324527, at *1 (W.D. Ky. Jan. 26, 2016) (citation omitted). Generally, striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy[.]" Boultinghouse, 2016 WL 324527, at *1 (quoting Brown v. Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)). "Motions to strike under Rule 12(f) are committed to the sound discretion of the of the trial court." Equal Employment Opportunity Comm'n v. Indi's Fast Food Rest., Inc., No. 3:15-CV-00590-JHM, 2016 WL 7473130, at *6 (W.D. Ky. Dec. 28, 2016)

As stated, Rule 12(f) empowers the Court to strike certain material from "a *pleading*." Fed. R. Civ. P. 12(f) (emphasis added). The Rules of Civil Procedure define "pleading" as:

> [A] complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original third party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

Fed. R. Civ. P. 7(a). "An affidavit is not a pleading that is subject to a motion to strike under Rule 12(f)." Trustees of Plumbers & Steam Fitters Local 184 Supplemental Pension Plan v. Ivitts Plumbing Contractors, Inc., No. 5:12-CV-112-TBR, 2014 WL 3905589, at *3 (W.D. Ky. Aug. 11, 2014) (citing Fox v. Mich. State Police Dep't, 173 F. App'x 372, 374 (6th Cir. 2006); Adams v. Shelby Cnty., Tenn., No. 03–2975 B, 2006 WL 522422, at *1 (W.D. Tenn. Mar. 30, 2006); City of Kalamazoo v. Mich. Disposal Serv. Corp., 125 F.Supp.2d 219, 221–22 (W.D. Mich. 2000)); Sutton v. U.S. Small Bus. Admin., 92 F. App'x 112, 118 (6th Cir. 2003)).

Moreover, motions to strike are generally disfavored. "Rather than striking material, a court may simply ignore inadmissible evidence." Ivitts Plumbing, 2014 WL 3905589, at *3 (citing Berry v. Frank's Auto Body Carstar, Inc., 817 F.Supp.2d 1037, 1041–42 (S.D. Ohio 2011) ("[M]otions to strike are disfavored; a Court should ignore inadmissible evidence instead of striking it from the record.")). The Court finds this approach the most prudent. Accordingly, the Court will deny Childress' Motion to Strike and will consider the parties' arguments regarding the admissibility of the challenged portions of the affidavit at issue in its ruling on any future motions for summary judgment.

## E.  Motion for Leave to File a Sur-Reply for Motion for Default Judgment

Defendants argue that Childress' Reply [DN 12] contains new allegations in the form of a Motion to Strike; therefore, they should be afforded the opportunity to respond to these allegations. As such, Defendants have requested that the Court grant them leave to file a sur-reply to Childress' Reply. "Although the Federal Rules of Civil Procedure do not expressly

permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" <u>Key v. Shelby Cty.</u>, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting <u>Seay v. Tenn. Valley Auth.</u>, 339 F.3d 454, 481 (6th Cir. 2003)).  Granting leave for a party to file a sur-reply is left to the sound discretion of the district court.  <u>Id.</u>

Here, Childress did raise an entirely new motion in its Reply to the Motion for Default Judgment.  Because Defendants' Sur-Reply was included with the Motion, the Court was able to consider the arguments made in the above analysis.  As such, the Court will grant Defendants' Motion for Leave to File a Sur-Reply.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **DENIED**; Plaintiff's Motion for Default Judgment is **DENIED**; Defendants' Motion for Leave to File Responsive Pleading is **DENIED as MOOT**; Plaintiff's Motion to Strike is **DENIED**; and Defendants' Motion for Leave to File a Sur-Reply is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 9, 2017

cc: counsel of record